IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| CAROLINE E. ERAMO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:12-05004-DGK-SSA |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Caroline Eramo seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and application for supplemental security income based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq*. Plaintiff alleges she became disabled as of September 25, 2009 due to chronic neck, back, and hip pain; numbness in her left arm; thyroid disease; depression; and fibromyalgia. The ALJ found that although Plaintiff suffered from several severe impairments, she retained the residual functional capacity ("RFC") to perform light work with various restrictions.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

Plaintiff filed her application for Supplemental Security Income on January 27, 2010 and her application for disability insurance benefits on January 28, 2010. On April 22, 2010, the Commissioner initially denied her applications. The ALJ denied Plaintiff's applications on January 19, 2011following a hearing. The Appeals Council denied Plaintiff's request for review on November 10, 2011, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

## Analysis

Generally, a federal court's review of the Commissioner's decision to deny an application for benefits is restricted to determining whether the Commissioner's decision is consistent with the Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable

impairment that has lasted or can be expected to last for a continuous period of not less than 12 months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[2]

Plaintiff contends the ALJ erred by: (1) finding her prior hip fracture was a non-severe impairment; (2) improperly determining her RFC; and (3) finding her subjective pain complaints were not credible.

**A.   The ALJ correctly found Plaintiff's prior hip fracture was non-severe.**

At some time prior to September 25, 2009, the record is unclear when, Plaintiff's left hip was fractured in a car accident. Because a subsequent MRI showed the fracture had completely healed, the ALJ ruled it was a non-severe impairment, but considered the injury when formulating Plaintiff's RFC. Plaintiff disputes the ALJ's finding, contending hip pain imposes more than a minimal limitation on her ability to work.

A severe impairment is an impairment that significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment is not severe when it has no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521; Social Security Ruling (SSR) 96-3p. The claimant bears the burden of establishing

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

her impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Although severity is not an onerous requirement to meet, it is also not a toothless standard. *Id.* at 708.

Substantial evidence supports the ALJ's finding that Plaintiff's hip injury was a non-severe impairment. An MRI performed on May 17, 2010 showed the hip fully healed. R. at 49, 284. Although the MRI showed mild degenerative narrowing of the left hip joint, it did not suggest that the hip significantly limited Plaintiff's ability to perform basic work activities. R. at 49, 284. Additionally, a consultative examination performed by Dr. Saad Al-Shathir, M.D., on April 15, 2010 found that while Plaintiff had chronic low back, neck, and shoulder pain, she had no limitations from hip pain. R. at 233. Dr. Al-Shathir observed Plaintiff's gait was normal, and she had normal strength in her legs. R. at 233, 235. Dr. Al-Shathir's findings are also consistent with Dr. Horace Petersen's, D.O. examination, which found tenderness in Plaintiff's back and neck, but no hip pain or any limitations from hip pain. R. at 312.

Plaintiff contends objective evidence on the record indicates her hip pain is severe. Plaintiff notes MRI scans of her neck showed advanced discogenic disease, and MRI scans of back scans showed mild degenerative facet changes. Plaintiff also notes Dr. Al-Shathir diagnosed her with chronic low back pain. But this evidence does not prove Plaintiff suffered from severe hip paint. Even if it did, the ALJ would not have erred because pain is a symptom of an impairment; it is not itself an impairment. 20 C.F.R. § 404.1569a(a) and 916.969(a).

Finally, Plaintiff argues her own testimony establishes her hip pain is a severe impairment. As discussed below in part C, the ALJ properly discounted these statements because Plaintiff's testimony on this point was not credible.

Accordingly, the ALJ did not err in finding her prior hip fracture was not a severe impairment.

**B.     The ALJ properly determined Plaintiff's RFC.**

Plaintiff also asserts the ALJ erred in determining her RFC. Plaintiff contends the ALJ failed to consider her advanced degenerative disk disease and erroneously relied on Dr. Al-Shathir's opinion in finding she could perform light work. Plaintiff also alleges that in determining her RFC, the ALJ failed to consider the effects of her prior hip fracture and depression.

RFC is defined as the most that a claimant can still do despite her physical or mental limitations. *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007). In assessing a claimant's RFC, the ALJ must consider the combined effect of both severe and non-severe medically determinable impairments. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). The ALJ must consider all relevant evidence, including medical records, observations from treating physicians, and the claimant's subjective statements about her limitations. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The claimant bears the burden of demonstrating her RFC. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

A treating physician's opinion typically receives greater weight than opinions from other medical sources. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). In contrast, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). Where the record does not contain any credible opinion from a treating physician, the ALJ may rely on non-treating source opinions. *See Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006).

In the present case, because there were no records from any treating physicians, the ALJ properly relied on Dr. Al-Shathir's opinion which was well-supported and consistent with the medical evidence of record, including his own examination results. During the doctor's April 15, 2010 examination, Plaintiff reported neck, shoulder, and back pain, and that the back pain

5

radiated to her groin and thigh. R. at 233. Dr. Al-Shathir found Plaintiff had good grip and upper extremity strength; normal coordination and muscle tone; normal gait and normal strength in her legs; no obvious spinal deformity and a full range of motion in her spine; no significant loss of range of motion; and no neurological deficit. R. at 233-35. He diagnosed Plaintiff with chronic low back pain with symptoms of radiation in the left groin and thigh, and chronic neck and shoulder pain. R. at 233. As for Plaintiff's functional limitations, Dr. Al-Ahthir opined Plaintiff could reach above her head; bend and pick up 12 ½ pounds and carry that weight; switch objects from one hand to another; manipulate objects in her hands; and reach, bend and cross her legs. R. at 233. His opinion supports the ALJ's finding that Plaintiff was limited to light work, which involved carrying 20 pounds occasionally and 10 pounds frequently. R. at 50.

Plaintiff argues that the ALJ erred in relying upon Dr. Al-Shathir's opinion because when the doctor was making his findings he did not have the results of MRI scans completed a month later, in May 2010. Consequently, Dr. Al-Shathir's opinion was "outdated."

This argument is meritless. Dr. Al-Shathir examined Plaintiff almost seven months after her alleged disability began, thus his opinion described Plaintiff's condition during the relevant period. R. at 147, 233–35. There is no evidence that Plaintiff's condition deteriorated in the month after Dr. Al-Shathir's examination. Furthermore, the MRI results were consistent with Dr. Al-Shathir's diagnosis that Plaintiff had chronic low back pain with pain radiating in her left groin and thigh, and chronic neck and shoulder pain. R. at 233, 284–86. The MRI did not suggest Plaintiff had any greater limitation than those assigned by Dr. Al-Shathir, thus this case is not analogous to *Olheiser v. Apfel*, No. CIV 3:99CV94, 2000 WL 33340310, at *1-4 (D.N.D. Dec. 12, 2000) (holding the Commissioner's decision was not supported by substantial evidence where subsequent medical evidence called into question the RFC assessment previously relied upon by the ALJ).

Although the ALJ properly gave significant weight to Dr. Al-Shathir's assessment, it is clear she gave some credit to Plaintiff's self-reported limitations and thus considered the entire record in formulating Plaintiff's RFC. For example, Dr. Al-Shathir indicated that Plaintiff could reach above her head. R. at 233. However, the ALJ limited Plaintiff to only occasional overhead use of her left, non-dominant arm. R. at 50–51. The ALJ also limited the amount of time that Plaintiff could stand, walk, and sit during the day, and restricted Plaintiff to occasional stooping and crouching. R. at 50–51.

There is also no merit to Plaintiff's contention that the ALJ failed to consider her non-severe impairments of a prior hip fracture and depression. The ALJ specifically acknowledged her duty to consider both severe and non-severe impairments. R. at 47. And to account for Plaintiff's hip impairment, the ALJ limited Plaintiff to light work and restricted the amount of time that she could sit, stand, and walk; crouch and stoop; and use ladders, ropes, or scaffolds. R. at 50–51. Apart from Plaintiff's subjective statements, which the ALJ properly discounted, there is no evidence indicating that Plaintiff's hip impairment imposed any greater limitations.

Similarly, the ALJ rightly did not impose any restrictions based on Plaintiff's depression because evaluating psychologist Dr. Jennifer Alberty, Psy.D., expected Plaintiff's depression to resolve itself in six to twelve months. R. 319. Furthermore, the ALJ rightly declined to impose any specific work restrictions on the Plaintiff, such as limiting her from interacting with the general public, because Dr. Alberty did not recommend any such restriction and there is no credible evidence on the record supporting such a restriction. R. at 315–19.

**C.      The ALJ did not err in discounting Plaintiff's credibility.**

Finally, Plaintiff argues that the ALJ improperly discounted her credibility. The ALJ gave five reasons why Plaintiff's testimony was not fully credible: (1) Plaintiff's allegations were not supported by the medical evidence of record; (2) Plaintiff received only conservative

7

and routine treatment for her conditions; (3) Plaintiff failed to follow her doctors' recommendations; (4) Plaintiff's behavior at the hearing was inconsistent with her subjective complaints; and (5) Plaintiff's medical providers did not restrict her activities in any way. R. at 53. Plaintiff challenges two of these reasons, arguing that Plaintiff's subjective complaints were not inconsistent with the medical evidence or her behavior at the hearing.

As a threshold matter, credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including medical records; statements from the plaintiff and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When the ALJ articulates the inconsistencies that undermine the claimant's subjective complaints and those inconsistencies are supported by the record, the ALJ's credibility determination should be affirmed. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

In the present case it is undisputed that three of the ALJ's five proffered reasons are supported by the record, and the Court finds no merit to Plaintiff's challenges to the other two. Although an ALJ cannot discount a claimant's subjective complaints solely for lack of objective medical evidence, the ALJ may consider objective medical evidence as one factor in her credibility analysis. *See Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). Here Plaintiff testified that she spent most of her day reclining because of constant, debilitating pain in her back, neck, and hip. R. at 11–21. But as noted by the ALJ, Plaintiff's MRIs showed only mild degenerative facet changes with no herniated disks and only mild degenerative narrowing of the left hip joint. R. at 53, 284, 286. During a consultative examination, Plaintiff had a normal gait,

normal strength in her upper and lower extremities, full range of motion in her spine, and no significant loss of range of motion of her neck or neurological deficit. R. at 53, 233–35. Additionally, Dr. Al-Shathir determined that Plaintiff had good grip strength and could pick up and manipulate objects in her hands. R. 233–34. This contradicts Plaintiff's testimony that she could not pick up small objects. R. at 15, 53.

The ALJ also did not err in finding that Plaintiff's demeanor at the hearing detracted from her credibility. R. at 53. Although not dispositive, the ALJ may consider a claimant's demeanor during the hearing in making credibility determinations. *Johnson v. Apfel*, 240 F.3d 1145, 1147–48 (8th Cir. 2001). As noted by the ALJ, Plaintiff testified that she could not sit for more than five to ten minutes at a time. R. at 19–20, 53. However, she sat throughout the forty-minute hearing. R. at 4–33, 53. This corroborates the ALJ's credibility determination.

Because the ALJ has articulated the inconsistencies that undermine the claimant's subjective complaints and these inconsistencies are supported by the record, the ALJ's credibility determination is affirmed. *Eichelberger*, 390 F.3d at 590.

## Conclusion

After careful examination of the record, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     April 18, 2013                   /s/ Greg Kays
                                           GREG KAYS, JUDGE
                                           UNITED STATES DISTRICT COURT